Mr. Wells, you are ready Good morning Judge Newman, Judge Moore, and Judge Chen. It is always good to appear before you. If I may please the Court, in January this year, the beginning of this year, this Court gave Al Procopio a pathway to benefits by finding that he served within the Republic of Vietnam. At the end of this year, as we near the end of the year, he is still not getting those benefits. The only intervening factor was an act of Congress which took effect on June 25th of this year. What Congress did was give a separate and distinct pathway so that now we were dealing with two pathways. The Secretary chose to use the second pathway as a means of eliminating that first pathway. We think that was not correct. First of all, the key word that is used in the first section, 1116A, is that they were adding a section. They did not amend, they did not repeal, they did not modify section 1116. They added a section, a separate and distinct pathway. But in doing so, the Secretary's interpretation was that we were going to go ahead, or he was going to go ahead and cut off that first pathway. Now, there are minor differences between the areas in the first pathway, the territorial sea. The second pathway, the term offshore, and actually Can we first turn to whether we have the authority to review this at this stage? I guess on one hand, the argument from the government is that by imposing a stay, a temporary stay, this is just a pause on administering all these claims. There's going to be a lot of claims. And so the agency is trying to get its administrative ducks in a row, and then it's going to move forward. But in the end, there's nothing final, per se, in the sense that no burdens have been imposed, no rights have been adjudicated. And so this is therefore not something that could be regarded as a final agency action. Could you respond to that? Certainly. I'm glad you brought that up, Your Honor. It certainly is final. We've had at least a dozen people that we know of that have passed away during the pendency of the stay. It's certainly final to them. But if you look at other actions, you know, this closed one of the pathways. It closed the pathway by Procopio. Now, one of those factors deals with airspace. And Judge Cheney's first oral argument, I think you raised that issue, is would Procopio apply to airspace? And the answer I think we gave you at the time, the correct answer is yes, it would. But the legislative history of 1116A, it eliminates the airspace for anyone that flew over the territorial sea. So we have that type of final agent action. It closed off the pathway. Questions are, was this a final agency action? I think it was. You've got to have... When you say it closed off the pathway, you're talking about 1116A did that, but you're not appealing 1116A. That's right. You're appealing a stay. That's right. So whether this closed off the path to airway veterans receiving benefits isn't at all what you're appealing, and nor is that interpretation at all relevant to the stay. And actually, Your Honor, I think we're tied up on the word stay. We're appealing the policy. And the policy of that, as came out in the Secretary's 1 July memo, just happens to cut off any pathway under 1116. And I think that is the most important thing. The Court and Congress, working separately, gave us two pathways. One has been turned off. I'm looking at the Secretary's memo. It's on Appendix Page 1. Where does it cut off the pathway to 1116? Very interesting, because it doesn't actually address 1116, and perhaps it should. But what it does is... ...to warrant benefits under 1116. Because it has put a halt on any claim brought under 1116. We have... The 1116 claims were fairly easy under any definition of the territorial sea. And I met with the Secretary in April. The documents that we presented are here in the appendix. And basically, approximately 85% of all the ships could have been completed without working on the stay. Because everybody agrees that the ships that were in the harbors, or within 12 nautical miles of land, were covered by Procopio. They have been stayed. People have died. Other people may or may not ever be contacted. But the airspace becomes relevant when you look at the fact that somebody in the airspace over the territorial sea will no longer be able to get covered. Why? Because the Secretary has contended that 1116A actually replaces 1116. And Your Honor, I would point you to page 4 of the appendix, where there is a memorandum from the Business Benefits Administration that confirms that. The Secretary says in the documents that reach us that this change of law is overwhelming their resources in terms of handling the work, the statutory change. And so he imposes a six-month delay in effectiveness. And also, and one aspect which I thought was curious, asks or requires that the claims be refiled. But is your understanding of all of these proceedings that on January 1st, it goes back to handling with all, it doesn't say that nothing is happening in this period of the stay. It's more a matter of priorities and burdens, is that correct? I didn't mean to interrupt you, Judge, I thought you were finished. It's interesting that you bring that up, because there's nothing in the statute that prevents the Secretary from extending the stay. He said he's not going to, but he told me in April that he was going to move forward with Procopio. But to answer your specific questions, the statement that they say that they've been overwhelmed and so on and so forth, we consider it a complete balderdash. It's the most polite word I can call for it. If you look at Appendix 6 through 8, I'm sorry, Appendix 8 through 10, we will show you that on the deck logs, these adjudication decisions make about a 3 to 5 minute decision. If that deck log says they're in the territorial safe. Yes, but it takes the VA 18 months to issue a docket number in a case. So 3 to 5 minutes to you and I are apparently not 3 to 5 minutes to the VA. That's meant as a criticism of then you don't have to do it. I understand that. We offered to assist them with it. We offered to bring our director of research up at our expense and the Secretary agreed to that. Everything seemed like it was going on track. But even with the VA, if you look and the log says territorial sea or on Appendix 7 where it says Nantrong Harbor or on Appendix 8 where it says Danang Harbor in the midnight to 4, even the VA can make that decision in minutes. Well, and that's one of the things that concerns me is that the explanation the government gives for why these stays are necessary, it seems to me the only substantive reason is because we're not sure exactly where the 12 mile limit is and we may have to issue regs or we may have to ask Congress. But there's no question that the vast majority of these veterans whose cases have been stayed, they're not in dispute. Mr. Procopio, we know exactly where he was. He was well within the 12 mile limit no matter how you define the 12 mile limit. It seems a bit arbitrary to have stayed all claims. But wait, the flip side of that is they were only stayed for six months while the VA, an agency which is absolutely struggling to do right by our veterans and in my view, not unfortunately doing right by our veterans, but they're struggling to, I don't know what to do. Six months is a very short period of time. I understand not short for everybody. Not short for Vietnam veterans who served a long time ago and who are actually sick, which is why they fall within this statute. So trust me, you've got me on all of that. But I just don't know what to do with such a short stay. I trust you Judge Moore, but I'm not sure that I trust the secretary to maintain six months. Well, you said there's no outer limit, but the statute does have an outer limit. It says he can only stay things until the secretary commences implementation of 1116A. That's correct, Your Honor. And as you pointed out, it takes them 18 months to do a docket number. So we could be looking at six months, 18 months, two years, we don't know. That's what I was wondering. Why isn't the implementation date the effective date? I mean, the effective date is the date the statute goes into effect, which is January 1, 2020. So if the government stands up and agrees that the implementation is the effective date, which is kind of what I understood from their brief, then the secretary would not have authority to extend stays. Except if you do a different reading of the statute, it actually says that he can start those stays on January 1, 2020. But the implementing regulations is the end product, but we don't know when that's going to happen. Now, maybe the secretary will lift it on January 1. Well, you say implementing regulations, but I don't think that that's right. I mean, he's implementing the statute. Isn't he going to be processing claims and issuing benefits? I mean, we're not going to, or is it your view that the government is going to wait? You need to stay by the podium, by the way. That's okay. Your voice won't be picked up and recorded properly if you walk away. But I mean, isn't it the case that he has to, the secretary and the VA has to start processing and awarding payment under 1116A, effective January 1? You would think so. But Mr. Procopio, we all agreed that he was going to get his benefits back in the Procopio decision. He was remanded back from the Court of Appeals of Veterans Claims, and his claim is stayed. So it's, I don't think there's any guarantees. I'm sure that Mr. Broskin, in good faith, is going to come up and say, look, I've been told that they're going to lift it on January 1, and certainly that statements have been made. But that just means we have to- Well, and here's the thing. I hate to tell you this. I mean, we're much quicker than the VA, but we're not instantaneous. It is, you know, we're into November. I'm a little worried by January 1, your complaint is moot if we can't act with that degree of expedience. And that might be the case, Your Honor, and something we've considered. But at the same time, even if the decision comes out in December or January that's favorable to us, it will prevent any further extensions or the addition of any additional stays. Your Honor, I'm into my rebuttal time, and I'm so sorry for that, but if I can reserve the remainder of my time, I'd appreciate it. All right. Let's hear from the government. Mr. Broskin. May it please the Court. To address, Your Honor, Judge Moore's question, the stay expires on January 1. VA's statements to Congress in October were that the stay is going to- That is what we stated in our brief. When he implements the act, which is- I know you stated in your brief you'd like to hear a yes. Yes. Okay. So this particular provision of this new law that went into effect, or that was passed in last June, that part evaporates as of June 1, 2020. January. January. As when it comes to the power to stay. When the new statutory provision becomes effective on January 1, that's when the stay- Okay. Not just that's when the stay. I just want to get this soundbite, you know, like I'm deposing you, and I have my question and I have my answer, because you bind the government. And if you bind the government, I'll be very happy. So my question to you is, is it the government's position that Section 1116A stay authority, which allows the Secretary to issue stays up until implementation of Section 1116A only allows the Secretary to issue stays up until January 1st of 2020? And after that, this statutory section, at least, gives the Secretary no further stay power? Yes. Thank you. And I'd like to just expound upon that a little bit, because the effective date of 1116A is January 1st. But why isn't this, this seems quite straightforward, so that's okay, but why isn't this different? This litigant, this veteran, this plaintiff brought the action. He went through the whole litigation process. He got a favorable decision from this court. The petitions from cert were eventually not filed. It's all over. Isn't this veteran entitled to the judgment that he got from this court, whether or not there was a statute that applies to the rest of the world? Yes, Your Honor. And then why should the stay apply to him? It doesn't, Your Honor. Mr. Procopio's claim has not been finally decided by the board, but my understanding is his stay- Because of the stay? I mean- It hasn't been finally decided by the board because of the stay memo. Because the mandate issued here March 22nd, I believe it went back to the CAVC, which issued its remand to the board sometime during the summer. I believe a letter went out from the board offering to allow Mr. Procopio to submit additional evidence in support of his claim, and it just hasn't reached that final point yet. But I believe it should soon, but his claim is not covered by the stay, and the reason for that is paragraph six on appendix one says the stay does not apply, or does not prevent VBA or the board from complying with any order of any court. And the remand order from this court to the veterans court and from the veterans court to the board is an order that the stay does not affect. So Mr. Procopio's claim should be decided in due course and should not be affected by the stay. I'm confused. Has the VA communicated this to Mr. Procopio? That Mr. Procopio's claim has not been part of the stay and that, in fact, it's just part of some ordinary processing of his claims? I'm unaware of any communication regarding the stay between VA and Mr. Procopio. I know there was a letter in early October offering Mr. Procopio the opportunity to submit additional evidence since they had received it on remand, so that the working of the case was ongoing. But I can't represent whether there's been any communication. So he's here seeking enforcement of our judgment. And apparently it's not being enforced. Well, I would dispute respectfully that he's here seeking enforcement of his judgment. He's here on a petition under Section 502 to challenge the stay. We could have raised a standing issue with respect to Mr. Procopio because the stay, by its plain language... But you couldn't with regard to everybody else, so you're just skipping... Right. And we agreed to expedited treatment because of the short duration of the stay. And so to save everyone the trouble... So how does one cope with this morass when it's so clear, it seems, from what you say as well, that there's no real dispute as to what ought to be happening? That is enforcement of the judgment. Well, I agree. As to Mr. Procopio, the remaining petitioners... Yes, Mr. Procopio. Right. His claim should be decided and it should not be stayed until January 1st. I don't know exactly when the board's going to issue the decision, but it's not stayed in doing so until January 1st. The other petitioners simply are seeking to take advantage of the precedent set by Procopio, but not a judgment of this court. And so there, the change in law affected by the Blue Water Navy Act does come into play and the stay authority authorizes the secretary to stay those claims, in addition to newly filed claims under the new statutory provision. Your brief suggested that come January 1 or maybe January 2, the VA is going to start issuing decisions, granting or denying claims of service presumption for Blue Water Navy veterans. Is that accurate? Yes, Your Honor. As the VBA representatives testified to Congress on October 30th, they're all going to be there on January 1st, issuing decisions on claims that have continued through development. But until the final guidance is in place and the final lines have been drawn, they cannot make a final determination on each and every claim. And so that was part and parcel of what they have been attempting to do in the sixth month that they've been given. So there's some guidance document you're saying VA will be issuing very soon? Yes, guidance and training that they're going to be giving to all the VBA claims adjudicators. When is the guidance document coming out? Well, there have been some guidance documents that have been issued. There are some open questions that they're still grappling with, such as, as we noted in the facts section of our brief, where exactly the line between Cambodian waters and Vietnamese waters should be drawn, given the language in the statute. So there are some issues that they're still figuring out. But the training and guidance should all be done in time for them to begin issuing decisions on January 1st. That is what VBA... So in the next seven weeks, you're saying? Yes, Your Honor. What about a notice of proposed rulemaking? Where's that? I don't know exactly. I know they are working on the regulations, but the Blue Water Navy Act is... So the VA believes, though, that it can handle all these claims while in parallel doing a rulemaking process? Well, I believe it's VA's position that the veterans should not be required to wait while they go through a formal notice of common rulemaking, which can obviously take a long time. And Section 2C1 of the Blue Water Navy Act contemplated that the VA could... I'm just trying to satisfy my own paranoia that the VA is not going to wait until final regulations issue before they ultimately process and decide on... That is not the VA's position. That is not the VA's intention. But here again, this veteran hasn't brought a class action. And apparently, he hasn't received the relief that the court assigned. Mr. Procopio, right. But he should be in due course, Your Honor. His relief is not being affected by this day. His decision should be issued, I would hope, very soon by the board. But I... It would have been nice if they had gotten it out before today, wouldn't it? It would have. Yeah. So as you... I just want to understand, whose court is the ball in with respect to Mr. Procopio? You suggested earlier that perhaps the board was waiting on a submission of further evidence for Mr. Procopio. Is that where we are now? Or is the ball really in the board's court, the BVA's court, where the BVA has everything it needs, and now it needs to render a decision on Mr. Procopio's claim? It's in the board's court. That's my understanding. The BVA sent out a notice to Mr. Procopio that he had 90 days to submit additional evidence. He could waive that time, and the board would move to an immediate adjudication. And he did waive that time, and so the board has moved to adjudicating his claim. Were you in the courtroom for the appeal, Procopio appeal, argued earlier this week? No, but I am aware of it. And it left me with the impression that they were arguing with him to establish that he was within the territorial waters. You say that that's over? Well, I don't know the specific location of his service. I do believe Mr. Lawson, it was unclear from the records whether he had Type 1 or Type 2 diabetes, and so there were other factual questions that needed to be determined on remand. Certainly, a stay is a rather blunt instrument, and there are veterans whose service records may show that they were within visual distance of land. And I don't know the facts of Mr. Lawson's case well enough to say whether he falls within that or not. But the line drawing that is required under the Blue Water Navy Act will be complete by January 1st. In addition, the VA is undertaking a massive scanning of all Navy deck logs held by the archives so that they can be fed into an electronic tool that the claims adjudicators can use to very quickly determine whether or not someone's served within the geographic boundaries of the Blue Water Navy Act. So there's a lot that is ongoing in order to expedite the treatment of these claims,  Again, though, Mr. Lawson's claim will be remanded, presumably, by this court. If it's remanded, it would not be affected by the stay, similar to Mr. Procopio's claim. Okay. Anything else? Anything else? Do we have the power to review this because it's at minimum an interpretive rule? Your Honor, we would dispute that it's an interpretive rule at all. I think the stay memorandum itself simply applies the authority given in Section 2 of the Blue Water Navy Act. If it was an interpretive rule of general applicability, it would fall under 552A1 and would be reviewable. Our position is there's nothing interpreted in this stay memorandum. The memorandum says you can stay claims related to service covered by 1116A and for the diseases covered by that. Did the Secretary have to engage in some kind of interpretation of the new law that, in his view, grants him this authority to do these kinds of stays to claims that preexisted the law that passed in June? I don't believe so, Your Honor. The plain language of the stay authority is that he can stay the claims that he stayed. It didn't require any interpretation to reach the stay memorandum here. The stay memorandum does not put forth any interpretation of that provision. It simply states that he was authorized and the plain language of the statute so authorizes him. The opposing counsel mentions that, in his view, what the VA has effectively done is eliminated 116 claims and shunted everyone into 1116A. What is the VA's position on this? I think with respect to service in the offshore waters, Congress's use of the term notwithstanding at the beginning of 1116A, subparagraph D suggests that for sailors, their claims will be considered under the geographic boundaries of 1116A-D. I think I don't know the answer with respect to service in the airspace. The Procopio decision does not, I don't believe, expressly address service in the airspace. 1116 has not been repealed, and so one could imagine a claim from an airman attempting to argue that Procopio provides him with a route for presumptive service connection. But because we haven't really delved into that type of claim, I can't say for sure how this stay provision affects that claim. Thank you. Mr. Breskin. Mr. Wells. Your Honors, I don't question Mr. Breskin's belief in what he says, but I'm Al Procopio's lawyer. I can tell you he stayed. Yes, we got a 90-day letter. That's something that's generated out of the Board of Veterans' Appeals. With every case we have, other Blue Water Navy veterans have gotten the same 90-day    is necessary. This is a case that should have been decided as a matter of priority. We've talked settlement with the General Counsel's Office, and we're told no. And if you look at the remand in the appendix, it basically says it's gone back to the Board, and that's where it stayed. So I appreciate that Mr. Breskin is not misrepresenting. I think he's just a little mistaken on exactly what the status is. But if there's any communications to Mr. Procopio dealing with his case going forward, Just to be clear, Mr. Procopio has not been informed that his case has stayed, right? He's been informed it's been stayed, yes. By whom? By me. When the full stay came out. Okay. That's just a tiny bit circular for me. I understand where you're going. I don't think anybody has specifically gotten a letter saying, let me back up on that, because some letters have been coming out on the stay, and I've got a number of water clients. I just don't remember off the top of my head whether Mr. Procopio got one or not. He did not. Well, at least I've checked the entire docket, which is supposed to contain all the filings, and he did not get a stay letter, at least according to the docket below. I just don't remember. Not everything gets docketed, so I'm not sure. So I don't understand why you're sort of so certain his claim has been stayed. We've all been hinting about how long it takes the Veterans Agency to do even the simplest of tasks, so it hasn't been before the BVA that long awaiting final resolution, having been sent back from the court, then having him requested, do you want to submit new evidence, he says, no, I waive that. It hasn't been there that long, so why are you positive it's stayed as opposed to they're just unfortunately slow in processing it, but they're processing it just like they should be? There are matters that were outside the record, negotiations between myself and the General Counsel's Office, that have caused me to have that rather firm opinion, and I'm sorry, it's not in the record, so we can't go into it, but it's my honest belief, so I stand here for you, that his case is not stayed, or I'm sorry, his case is stayed, I'm sorry. One thing that, no matter what happens in this case, one thing that should bring you, I would hope, great solace, is the government is now bound by the statement that was very clearly made today, that their interpretation of 1116A is that the Secretary's stay authority does not extend beyond January 1, not just that this stay doesn't extend beyond January 1, but that the Secretary would not be able to thereafter adopt another stay at that point. Circumstances change, Your Honor, and there could very well be a situation where, oh gee, we didn't get everything scanned in time, our deck log tool just wasn't properly developed, we're just going to have to expand it. No, no, that's not the case. We asked him about the interpretation of the statute and what authority it gave the Secretary, and the government was very clear on its position. I even told him, treat this like a deposition, so you understand I'm attempting to bind you, and he did, so he obviously was authorized to come in and make that position clear. If that has any impact on the decision today, I would think that you would have great cause to have an estoppel-like argument against future stays. Oh, we certainly would, and we would certainly push that, but, you know, Your Honors, and I'm sorry, I'm out of time, if you'll give me another moment, please. We have to look at the plain language of all the statutes, and the two statutes, 1116A, did not give the Secretary the authority to stay any claims brought under Pro Copio. Only gave it for claims brought under Public Law 116-23. Is this law got some internal inconsistencies? Sure. We recommended against it, I will tell you that, I think I cited that in the brief, because of these internal inconsistencies and because of the stay, and everybody felt, no, except us, that wouldn't apply, and the appendix has a number of letters from Chairman Takano, Senator Tester, et cetera, et cetera, saying, oh, gee, no, this doesn't apply to Pro Copio claims, and it doesn't, but the Secretary has so decreed. The integrity of the legal system requires that that be corrected, if nothing else. Nothing else for Mr. Pro Copio, but also Mr. Harper, who's not going to make it, he's hanging in out of sheer cussedness right now. For him, for Mike Ventus, for Mike Yates, and the other Blue Water Navy sailors who are sitting here getting sicker, closer to dying by the day, okay, when it's a, even for the VA, three to five minute decision to say, yes, he was in the harbor, yes, he was on a ship type that was conducting gunfire support, and the Secretary got off. I'm sorry for running over time, Your Honor, I appreciate the Court's indulgence. Thank you. Thank you both. The case is taken under submission. That concludes our arguments for this morning.